In the Matter of the Judicial Settlement of the Account of ALEXANDER F. VOIGHT and MARTIN RUST, as Administrators with the Will Annexed of the Estate of ANDREW RUST, Deceased.

BROOKLYN TRUST COMPANY, as Committee of the Property of ELLA V. SCHROETER, an Incompetent Person, and RICHARD M. CAHOONE, as Special Guardian for CHARLOTTE R. THOMAS, an Infant, Appellants; ALEXANDER F. VOIGHT and MARTIN RUST, as Administrators with the Will Annexed, and Others, Respondents.

Second Department, March 30, 1917.

Will construed — when payment to descendants per capita and not per stirpes — rules of construction — use of words " lawful descendants " and " issue."

A testator devised the proceeds of certain property in trust for the benefit of his daughter during her life and provided that at her death the principal should be paid " to her lawful descendants." Provisions of the will examined, and *held*, that it was the intention of the testator from the use of the words " lawful descendants " that payment should be made to such descendants *per capita* and not *per stirpes*, although in subsequent portions of the will he provided that the " children " and " issue " of certain persons were to take *per stirpes;*

That a child conceived before the death of the person upon whose life the remainder was limited and born thereafter was entitled to share in such funds.

If in one part of a will a given word or phrase is so restricted or expanded by accompanying explanation that the word or phrase is endued by the testator with a secondary meaning, however eccentric, the same word or phrase when again found in the same instrument may be given the same meaning; but identity of the word requiring construction with the like word elsewhere in the instrument is essential to the application of this doctrine.

When having once used for his testamentary purpose his own conception of the word " issue," the testator rejects that word in a later portion of the will, he at least suggests the possibility that in refusing the word once used and laying hold of another, he intended not merely a departure in expression, but a· change in purpose, which was substantial.

APPEAL by Brooklyn Trust Company as committee, and another, from parts of a decree of the Surrogate's Court of

Second Department, March, 1917.          [Vol. 178.

the county of Kings, entered in the office of said Surrogate's Court on the 26th day of May, 1916, settling the accounts herein and directing distribution of the estate.

*Francis L. Archer*, for the appellant trust company.

*Richards Mott Cahoone*, special guardian, appellant in person.

*Moses J. Stroock* [*Frank I. Schechter* with him on the brief], for the respondents Alexander F. Voight and another, as administrators, etc.

*Franklin A. Rogers*, for the respondent Theresa M. H. Halstead.

*Patrick E. Callahan*, special guardian, for the respondents John C. Halstead and another.

*Hugo H. Ritterbusch*, for the respondent John Andrew Rust.

Decree of the Surrogate's Court of Kings county affirmed upon the opinion of the surrogate, with costs to the respondents, administrators c. t. a., payable out of the fund payable to the descendants of Anna Marguerita Voight; with costs to the special guardian, payable out of the fund of their respective wards; and with costs to the committee, payable out of the fund of its incompetent person.

JENKS, P. J., THOMAS, STAPLETON and PUTNAM, JJ., concurred; CARR, J., not voting.

The following is the opinion of the surrogate:

KETCHAM, S.:

The 5th paragraph of the will under which this accounting is made devises certain real estate in trust to pay the net income thereof to the testator's son therein named during his life, and upon his death to sell the premises, and as to one-half of the net proceeds of said sale " to invest and keep invested the same, and to pay the annual income thereof to my said daughter Anna Marguerita Voight during her life, and at her death to pay the principal thereof to her lawful

descendants." The language quoted is the only portion of the will which requires construction. The daughter, Anna Marguerita Voight, died before the death of the life beneficiary first named, and at the death of such first life beneficiary the lawful descendants of such daughter were Alexander F. Voight, son; Theresa M. H. Halstead, daughter; Ella V. Schroeter, daughter; Charlotte R. Thomas, granddaughter, a child of deceased daughter; Mignonne C. Pelz, granddaughter, a child of Alexander F. Voight; John C. Halstead, grandson, a child of Theresa M. H. Halstead; Melville Schroeter, grandson, a child of Ella V. Schroeter, and an unborn child of the said Theresa M. H. Halstead, which child was subsequently born alive, and is now known as Chester A. Halstead. One-half of the proceeds mentioned in the passage of the will last specifically quoted is now payable to the lawful descendants of Anna Marguerita Voight, deceased. The question is whether payment shall be to such descendants *per capita* or *per stirpes.* Under a capital division eight persons — being children to the number of three, children of living children to the number of four, and a child of a deceased child — will take in equal rank and portion. Under a stirpital division each of the three children who survived the testator will take one share, and the child of a deceased child who has died since the testator's death will take one share by representation. It is aptly said in the brief of counsel for the trust company, as committee, that there has perhaps never come before this court a will in which there have been used all the troublesome words " children," " issue," " issue of her body," " heirs " and " descendants." In the 4th paragraph these provisions are found: There is a gift in remainder unto " the children " of the daughter, Anna Marguerita, who shall survive her. It is also provided that should any of her " children die before her * * * leaving issue who shall survive her, * * * then such issue are to receive the portion to which their parent would have been entitled if living." It is therein provided that if the said daughter " shall die leaving no such issue of her body her surviving " the gift shall be " unto the children of my son John C. Rust," or, if he be without issue at the time of the daughter's decease,

Second Department, March, 1917. [Vol. 178.

" to him, his heirs and assigns forever." In the 5th paragraph there is a gift of a remainder upon the death of the son, John, upon his "leaving issue him surviving," to "such issue and to their heirs and assigns forever." It is then provided that if the said son, John, " shall die leaving no such issue him surviving," then the subject of the trust is to be sold, and one-half of the proceeds is to be divided among five named nephews. As to the disposition to these nephews the following is the language of the will: " If at the time of such division any one of my said nephews shall be dead, then his issue, if any, shall take the same share their parent would have taken if living; but if he shall leave no issue him surviving, then such one-half of the proceeds shall be divided among the survivors of said five above-named nephews." By the 8th paragraph of the will the residuary estate is given in trust to pay one-half of the income to the son, John, and the other one-half to the daughter, Anna Marguerita, and the paragraph last named proceeds as follows: " Whenever either of my said children shall die leaving issue them surviving, my executors shall pay over and divide among such issue the one-half part of such balance of my residuary estate, and so likewise do upon the death of the other of my said children; should any of my children die without issue, and the issue of the other child survives them, then I give to such surviving issue the whole of the balance of my residuary estate *per capita;* but should both my said children die leaving no issue them surviving, then the rest, residue and remainder of my estate shall be divided equally among and between my following named nephews [here follow names]. If at the time of such division any one of my said nephews shall be dead, then his issue, if any, shall take the same share their parent would have taken if living; but if he shall leave no issue him surviving, then such one-half of the proceeds shall be divided among the survivors of said five above-named nephews." In the language first quoted at the head of this opinion the words " lawful descendants " must receive their normal meaning under which the division will be directed unless the contrary intent appears, however faintly, in the context of the will. It is sought to discover such contrary intent by the same process which was followed in *Matter of Farmers'*

*Loan & Trust Company* (213 N. Y. 168). There the word "issue" in the portion of the will which required construction was given a stirpital meaning, because the same word in other portions of the instrument was used with the obvious purpose to produce such meaning. In the case cited the opinion of the court, by Judge CARDOZO, repeatedly indicates that the only method there employed, and the only rule there announced, were limited to a comparison of separate portions of a will containing the identical word. Doubtless the case cited teaches that if in one part of a will a given word or phrase is so restricted or expanded by accompanying explanation that the word or phrase is endued by the testator with a secondary meaning, however eccentric, the same word or phrase when again found in the same instrument may be given the same meaning. But identity of the word requiring construction with the like word elsewhere in the instrument is essential to the application of the doctrine. The case cited contains no warrant for infusing the phrase "lawful descendants" when used *simpliciter* with a meaning which in the same instrument is put upon the word "issue" by its context. Hence, if the word "issue" or the word "descendants" has gained a specific value in one part of the will, the same word recurring in another part may well be of the same value; but where one of these words has been employed with a significance which is contributed wholly by its context, and in another part of the will another word is selected, without the reproduction of the qualifying expression, the reason of the rule apparent in the case cited vanishes. When, having once used for his testamentary purpose his own conception of the word "issue," the testator rejects that word in a later portion of his will, he at least suggests the possibility that in refusing the word once used and laying hold of another, he intended not merely a departure in expression, which would have been utterly idle, but a change in purpose, which was substantial. Where the word secondarily adopted is used without the modifying language, which alone transplanted the earlier word from its essential meaning, there is added evidence of a change of intent. This argument would seem to leave the words "lawful descendants" in their primary meaning, even though elsewhere in the will there were

many and repeated instances of the use of the word " issue " in such relation only as to produce a direction for a stirpital division. But it would not be extravagant to say that the more frequently and resolutely the testator had used the word " issue " with a stirpital intent the more abrupt and significant would be his employment of the phrase " lawful descendants " in a single contrast with his general purpose. But, as suggested *supra,* in the 4th paragraph of the will the gift to " issue " is of the portion to which the parent would have been entitled. In the 5th paragraph the gift to " issue " is to such issue without definition of the method of distribution. Again, in the case of the death of a nephew, the gift to " issue " is of the share of the parent. In the 8th paragraph the word " issue " is once used without qualification; is again used to effect a gift to issue *per capita,* and finally, in such fashion as to work a gift to issue only of the share which the parent of such issue would have taken if living. It seems imperative to assign to the term " lawful descendants " its intrinsic meaning in a case where, if it were sought to give it color from the use of the word " issue," the latter would be found to have been used with varying significance. The conclusion is that by the words " lawful descendants " in the language quoted *supra* from the 5th paragraph of the will it was intended that upon the death of the daughter, Anna Marguerita, the fund therein involved was to be paid equally to her descendants *per capita.* Among the persons entitled to a share of such fund is the child conceived before the death of the person upon whose life the remainder was limited and born thereafter. (*Kane* v. *Odell,* N. Y. L. J. March 13, 1916; *Matter of Farmers' Loan & Trust Co.,* 82 Misc. Rep. 330, 336; *Cooper* v. *Heatherton,* 65 App. Div. 561; *Marsellis* v. *Thalhimer,* 2 Paige, 35, 39, 40; *Jenkins* v. *Freyer,* 4 id. 47, 53; *Hone* v. *Van Schaick,* 3 Barb. Ch. 488, 508, 509.) The decree will conform to these views.